BLAHOVEC, J.,
This matter comes before the court for hearing on a petition for bifurcation of proceedings filed on behalf of husband. Wife filed a complaint in divorce alleging that the marriage was irretrievably broken in June 1989, and an amended complaint in divorce in August 1989. Husband filed an answer to the amended complaint and counterclaims for divorce and equitable distribution in March 1990.
In March 1990 husband filed his affidavit of consent pursuant to section 201(c) of the Pennsylvania Divorce Code. Wife filed her affidavit of consent on April 26, 1990 although she now seeks to withdraw it. The economic issues in this matter are primarily unresolved. It should be noted that in addition to signing the affidavit of consent before a notary public on April 23, 1990, while represented by her present counsel, wife, while represented by previous counsel, signed a consent order on September 11, 1989 dealing with certain economic issues and agreeing that she would file her 201(c) affidavit of consent within five days of receiving notice that husband filed his.
*177 Counsel for the parties stipulated that there has been a two-year separation for purposes of section 201(d) of the Pennsylvania Divorce Code even if wife is permitted to withdraw her affidavit of consent. It has been held that a party who files an affidavit of consent under 23 P.S. §201(c) may withdraw the consent prior to the entry of a divorce decree. Berman v. Berman, 33 D.&C. 3d 134 (1983). However, in the present case, if wife withdraws her affidavit of consent, she may well subject herself to contempt sanctions for violation of the order of September 11, 1989. In the present case, withdrawal of the affidavit is a moot point since counsel agree by way of a stipulation that there has been a two-year separation for purposes of section 201(d).
Wife opposes entry of a decree in divorce because: (1) discovery is not completed; (2) it would be potentially devastating to convert marital assets to a tenancy in common (parties own a $300,000 home free of encumbrances); (3) there is no proof that husband executed an assignment of a $100,000 insurance policy as required by the September 11, 1989 order; (4) husband must provide auto insurance and medical coverage; (5) wife is adverse on a personal and moral basis.
The case law requires that a determination as to bifurcation should be made only after the disadvantages and the advantages have been carefully explored and analyzed. Each case must be reviewed on its own facts and only following the court’s determination that the consequences of bifurcating the case will be of greater benefit than not bifurcating should it grant the petition. Wolk v. Wolk, 318 Pa. Super. 311, 464 A.2d 1359 (1983).
In the present case, substantial assets exist. That fact certainly does not indicate against bifurcation. Both counsel and their clients spent extensive time *178 in meetings wherein financial information was exchanged. Extensive negotiations took place prior to the entry of the September 11, 1989 order wherein wife agreed to sign an affidavit of consent. About $360,000 worth of assets are frozen besides the marital residence. The court certainly believes that the economics of this matter can be adequately dealt with by able counsel for the parties with any necessary prodding available from the court. This court concludes that granting a divorce will not work to the detriment of the parties at this time.
Husband pays $2,500 per month alimony to wife who voluntarily abandoned her employment at Community College (which provided her $14,000 per year plus benefits). Husband pays medical insurance and auto insurance for wife. A condition of granting any divorce will be continuation of these payments in addition to assigning the cash value of the $100,000 insurance policy required by the September 11, 1989 order.
Wife testified that her religious and moral beliefs do not approve of divorce. She stated she absolutely does not believe the marriage is irretrievably broken, but rather that husband suffers from the disease of alcoholism. She did, however, consent to a court order requiring her to file a 201(c) affidavit while represented by one attorney. Then, she filed an affidavit of consent while represented by current counsel admitting under oath that the marriage is irretrievably broken.
Husband testified the parties last cohabited three years ago. He stated that prior to the parties’ separation on March 15, 1988, wife asked him to leave numerous times. He lives with and is in love with another woman. The court finds beyond any reasonable doubt that this marriage is irretrievably broken.
*179 As Judge Strassburger stated in the case of Casey v. Casey, 129 Pitts. Leg. J. 42, 44 (1981):
“The goals of the Divorce Code can be accomplished only by the prompt dissolution of a marriage that is demonstrably over, and allowing the parties to restructure their lives. The goals cannot be accomplished by tying the parties to a dead marriage while all of the conflicts and time-consuming financial details are ligated. . .”
This court concludes there will be no economic disadvantage to wife who lives in the paid-for marital residence (where she has changed the locks) if a divorce is granted. Her alimony and insurance benefits will continue. The economic issues can certainly be resolved in due course by able trial counsel who have already met extensively in an effort to do so.
As the Superior Court noted in Wolk, supra:
“Bifurcation separates the termination of the marriage from the distribution of property so that the marriage and each party’s personal life are not held hostage to economic demands. To accomplish that end, it will be granted in this case.”
ORDER OF COURT
And now, July 16, 1990, after hearing, it is hereby ordered and decreed that the prayer of the petition for bifurcation of proceedings is granted. This court will enter a decree in divorce based on section 201(d) of the Divorce Code upon furnishing of the appropriate vital statistics information, military affidavit and other required documentation.
It is further ordered that this court retains jurisdiction of the economic issues. Defendant shall continue to pay alimony pendente lite and provide medical insurance and automobile insurance for *180 plaintiff as provided in the order of Judge Marker dated September 11, 1989.
It is further ordered that prior to the entry of any decree in divorce defendant shall assign to plaintiff $100,000 of the cash value of the insurance policy referred to in paragraph 13 of the order of Judge Marker dated September 11, 1989 until resolution of the economic issues of this divorce action.